M. Alim Malik, SBN 145546
amalik@jdtplaw.com
Edward A. Galloway, SBN 128962
egalloway@jdtplaw.com
Michael J. Fairchild, SBN 225946
mfairchild@jdtplaw.com
JACKSON, DeMARCO, TIDUS &
PECKENPAUGH
A Law Corporation
2030 Main Street, Suite 1200
Irvine, California 92614
Tel:  949.752.8585
Fax:  949.752.0597

Attorneys for Plaintiff
REBECCA R. GUNNOE, TRUSTEE OF
THE GUNNOE IRREVOCABLE
INSURANCE TRUST

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA R. GUNNOE, TRUSTEE OF THE GUNNOE IRREVOCABLE INSURANCE TRUST<br><br>            Plaintiff,<br><br>vs.<br><br>REASSURE AMERICA LIFE INSURANCE COMPANY, and DOES 1 through 30, inclusive<br><br>            Defendants. | CASE NO. 5:13-cv-00613 VAP (SPx)<br><br>**PLAINTIFF REBECCA R. GUNNOE, TRUSTEE OF THE GUNNOE IRREVOCABLE INSURANCE TRUST'S MEMORANDUM IN OPPOSITION TO DEFENDANT REASSURE AMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**<br><br>Date:    May 20, 2013<br>Time:    2:00 p.m.<br>Crtrm:   2 |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL ALLEGATIONS IN THE COMPLAINT ................................ 3

    A.      Factual Background Regarding Plaintiff and Her Efforts to
        Obtain a Copy of the Life Insurance Policy from Defendant
        After Her Husband's Death in March 2012, along with all
        Documents Relating to that Policy ............................................. 3

    B.      Factual Background Regarding Events Prior to Dr. Gunnoe's
        Death in March 2012 ................................................................. 6

    C.      Facts Disclosed by Defendant on December 17, 2012, in
        Response to Plaintiff's Fourth Written Request for a copy of the
        Policy and All Documents Relating to the Policy ...................... 8

III.    LEGAL STANDARDS FOR MOTION TO DISMISS ............................... 9

IV.     PLAINTIFF'S CLAIM FOR INSURER'S BREACH OF THE
    IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
    WAS TIMELY FILED ........................................................................... 10

    A.      Legal Standards for Determining When a Cause of Action for an
        Insurer's "Bad Faith" Breach of the Implied Covenant of Good
        Faith and Fair Dealing "Accrues," and Thus Causes the
        Applicable Statute of Limitations to Begin to Run ................... 10

        1.      Legal Standards for "Accrual" of a Cause of Action .............. 10

        2.      Elements of a Cause of Action For an Insurer's "Bad
            Faith"  Breach of  the Implied Covenant of Good Faith
            and Fair Dealing ............................................................... 12

    B.      Plaintiff Filed This Lawsuit Less Than Two Years After Her
        Cause of Action for "Bad Faith" Breach of the Implied
        Covenant of Good Faith and Fair Dealing "Accrued." ............. 13

    C.      In the Alternative, Under the "Discovery Rule," Plaintiff's
        Claim for "Bad Faith" Breach of the Implied Covenant Was
        Timely Filed .......................................................................... 15

V.      IN THE ALTERNATIVE, THE STATUTE OF LIMITATIONS ON
    PLAINTIFF'S CLAIM FOR "BAD FAITH" BREACH OF THE
    IMPLIED COVENANT WAS EQUITABLY TOLLED BECAUSE
    OF DEFENDANT'S FRAUDULENT CONCEALMENT OF
    MATERIAL FACTS ............................................................................ 18

    A.      Elements of Equitable Tolling and Application in Rule 12(b)(6)
        Motions ................................................................................. 18

    B.      Plaintiff's Complaint Alleges Sufficient Facts to Justify The
        Court's Equitable Tolling of Her Bad Faith Claim .................. 20

VI.     DEFENDANT'S FRAUDULENT CONCEALMENT OF
    MATERIAL FACTS EQUITABLY ESTOPS IT FROM ASSERTING
    A STATUTE OF LIMITATIONS DEFENSE ......................................... 21

1

VII. ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFF
LEAVE TO AMEND HER COMPLAINT ..................................................... 21

2

3

VIII. CONCLUSION ............................................................................................... 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## <u>CASES</u>

3

*April Enterprises, Inc. v. KTTV,*
4
   147 Cal. App. 3d 805 (1983) ............................................................... 16

*ARC Ecology v. U.S. Dep't of Air Force,*
5
   411 F.3d 1092 (9th Cir.2005) ................................................................ 9

6
*Ashcroft v. Iqbal,*
7
   556 U.S. 662 (2009) .............................................................................. 9

*Bell Atlantic Corp. v. Twombly,*
8
   550 U.S. 544 (2007) .............................................................................. 9

9
*Bernson v. Browning–Ferris Indus. of California., Inc.,*
10
   7 Cal. 4th 926 (1994) ........................................................................... 19

*Budd v. Nixen,*
11
   6 Cal. 3d 195 (1971) ............................................................................ 11

12
*Cervantes v. City of San Diego,*
13
   5 F. 3d 1273 (9th Cir. 1993) ................................................................. 19

*City of Vista v. Robert Thomas Securities,*
14
   84 Cal. App. 4th 882 (2000) ................................................................ 11

15
*Conley v. Gibson,*
16
   355 U.S. 41 (1957) ........................................................................... 9, 20

*Czajkowski v. Haskell & White, LLP,*
17
   208 Cal. App. 4th 166 (2012) .............................................................. 16

18
*Davies v. Krasna,*
19
   14 Cal. 3d 502 (1975) .......................................................................... 11

*Doe v. United States,*
20
   419 F. 3d 1058 (9th Cir. 2005) .............................................................. 9

21
*Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exchange,*
22
   132 Cal. App. 4th 1076 (2005) ............................................................ 21

*E-Fab, Inc. v. Accountants, Inc. Services,*
23
   153 Cal. App. 4th 1308 (2007) ............................................................ 11

24
*Egan v. Mutual of Omaha Ins. Co.,*
25
   24 Cal. 3d 809 (1979) .......................................................................... 12

*Federal Election Com'n v. Williams,*
26
   104 F. 3d 237 (9th Cir. 1996) .............................................................. 19

27
*Fox v. Ethicon Endo–Surgery, Inc.,*
28
   35 Cal. 4th 797 (2005) ................................................................... 10, 16

*Greenwich Ins. Co. v. Rodgers*,
729 F. Supp. 2d 1158 (C.D. Cal. 2010)..........................................................9, 12

*Holmes v. Hospira, Inc.*
2013 WL 1516952, *4 (C.D. Cal. 2013)..............................................10, 15, 18

*In re Marriage of Hanley*,
199 Cal. App. 3d 1109 (1988).............................................................................21

*Independent Trust Corp. v. Stewart Information Services Corp.*,
665 F. 3d 930 (7th Cir. 2012).............................................................................22

*Jablon v. Dean Witter & Co.*,
614 F. 2d 677 (9th Cir. 1980)......................................................................19, 20

*Lantzy v. Centex Homes*,
31 Cal. 4th 363 (2003)................................................................................18, 19

*Love v. Fire Ins. Exchange*,
221 Cal. App. 3d 1136 (1990)............................................................................12

*McCaskey v. California State Automobile Association*,
189 Cal. App. 4th 947 (2010)......................................................................11, 13

*McKelvey v. Boeing North American, Inc.*,
74 Cal. App. 4th 151 (1999)...............................................................................16

*Miller v. Bean*,
87 Cal. App. 2d 186 (1948).................................................................................11

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999)................................................................................10, 16

*Regents of Univ. of Calif. v. Superior Court (Molloy)*,
20 Cal. 4th 509 (1999).......................................................................................19

*Romano v. Rockwell International, Inc.*,
14 Cal. 4th 479 (1996).......................................................................................10

*Sagehorn v. Engle*,
141 Cal. App. 4th 452 (2006).............................................................................19

*Spray, Gould & Bowers v. Associated Internat. Ins. Co.*,
71 Cal. App. 4th 1260 (1999).............................................................................21

*Supermail Cargo, Inc. v. U.S.*,
68 F. 3d 1204 (9th Cir. 1995).............................................................................19

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
1 Cal. 3d 586 (1970)..........................................................................................11

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011)..............................................................................22

*United States v. Ibarra,*
    502 U.S. 1, 4, fn. 2 (1991) ............................................................... 19

*Walker v. Pacific Indemnity Co.,*
    183 Cal. App. 2d 513 (1960) ....................................................... 11, 12

*Waters v. United Services Auto. Ass'n,*
    41 Cal. App. 4th 1063 (1996) ............................................................ 12

*White v. Western Title Ins. Co,*
    40 Cal. 3d 870 (1985) ...................................................................... 15

**STATE STATUTES**

Cal. Code Civ. Proc. § 312 ...................................................................... 10

**OTHER AUTHORITIES**

Judicial Council of California, Civil Jury Instructions ("CACI"), No.
    2331 ................................................................................................. 12

**RULES**

Federal Rules of Civil Procedure, Rule 12 ................................... 1, 9, 10, 18, 19, 20

Federal Rules of Civil Procedure, Rule 15 ....................................... 3, 22

# I.     <u>INTRODUCTION.</u>

For at least four independent reasons, the Court should deny the Defendant life insurance carrier's Rule 12(b)(6) motion to dismiss the Complaint of Plaintiff Rebecca R. Gunnoe ("**Plaintiff**" or **"Trustee"**), the widow of Dr. Charles Gunnoe, for "bad faith" breach of the implied covenant of good faith and fair dealing on the ground that it is purportedly time-barred.

First, Plaintiff's claim "accrued" less than two years prior to the filing of this lawsuit. Damages are an essential element of the claim. There were no damages until the death of Plaintiff's husband on March 10, 2012, when the benefits of the life insurance policy first became due. For that reason alone, if no other, Defendant's Motion must be denied. There is, however, at least one other reason why the claim "accrued" less than two years prior to the filing of this lawsuit. Another essential element of Plaintiff's claim – Defendant's "bad faith" act which violated the implied covenant – was not known or reasonably discoverable to Plaintiff until December 2012. As discussed in detail in this Memorandum, shortly after the death of her husband and Defendant's failure to pay Plaintiff any benefits under the life insurance policy, Plaintiff sent four requests to Defendant for a copy of the policy and all documents in Defendant's file relating to the policy. Plaintiff sent two of those requests *before* the date Defendant now asserts the statute of limitations expired (September 25, 2012). Defendant refused to produce anything to Plaintiff. Plaintiff then retained legal counsel who sent two more requests (in October and November 2012) for the policy and documents relating to the policy. Defendant again refused to produce the policy, and never produced the policy to Plaintiff prior to the filing of this lawsuit on March 1, 2013. Further, in December 2012, Defendant disclosed a letter for the first time that showed Defendant's wrongful conduct. Prior to December 2012, Defendant had systematically concealed this letter from Plaintiff. Plaintiff timely filed this lawsuit less than three

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

1  months after Defendant produced that letter for the first time.  For these

2  independent reasons, Plaintiff's claim for "bad faith" breach of the implied

3  covenant did not accrue until less than two years prior to the filing of this lawsuit

4  on March 1, 2013.

5       Second, and in the alternative, under the "discovery rule," Plaintiff's claim

6  for "bad faith" breach of the implied covenant was timely filed.   If for any reason

7  this Court concludes that Plaintiff's claim accrued on September 25, 2010, which

8  was before Plaintiff's husband died and the benefits of the life insurance policy

9  were due, then the Court should apply the "discovery rule."  That rule applies

10  where a plaintiff's complaint shows on its face that the claim would be barred but

11  plaintiff shows:  (1) the time and manner of discovery of the elements of the claim

12  and (2) the inability to have made earlier discovery despite reasonable diligence.  In

13  the instant case, the facts show that Plaintiff acted with reasonable diligence after

14  her husband's death in March 2012 to discover the facts by making two written

15  requests to Defendant for a copy of the policy and documents relating to the policy

16  *before* the date Defendant contends the statute of limitations expired (September

17  25, 2012), both of which requests Defendant refused.  Defendant further refused

18  two more requests in October and November 2012 to produce the policy, and only

19  produced the key document that is the basis of Plaintiff's claim in December 2012.

20  Therefore, under the discovery rule, Plaintiff's claim was timely filed.

21       Third, and in the alternative, under the doctrine of "equitable tolling,"

22  Plaintiff's claim was timely.  The purpose of equitable tolling is "to disarm a

23  defendant who, by his own deception, has caused a claim to become stale and a

24  plaintiff dilatory."   As discussed above, the cause of any delay by Plaintiff in filing

25  her lawsuit was Defendant's own deception and concealment of critical information

26  to Plaintiff.

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

Fourth, and in the alternative, under the doctrine of "equitable estoppel," Plaintiff's claim was timely.   The four factors generally required in order to establish equitable estoppel are: (1) the defendant must know the facts; (2) defendant must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the plaintiff must be ignorant of the true state of facts; and, (4) plaintiff must rely upon the conduct to his injury.   As discussed above, the cause of any delay by Plaintiff in filing her lawsuit was Defendant's concealment of critical information known to Defendant but unknown to Plaintiff.  Defendant's consistent refusal to produce that information until after Defendant contends that the applicable statute of limitations expired shows that Defendant's concealment was not an accident, but was a deliberate act intended to injure an elderly widow seeking the benefits of her husband's life insurance policy.   Under the doctrine of "equitable estoppel," Plaintiff's claim was timely filed.

Fifth, and in the alternative, if this Court determines that Plaintiff has not sufficiently pleaded her claim, Plaintiff should be afforded leave to amend.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."

## II.   FACTUAL ALLEGATIONS IN THE COMPLAINT.

### A.   Factual Background Regarding Plaintiff and Her Efforts to Obtain a Copy of the Life Insurance Policy from Defendant After Her Husband's Death in March 2012, along with all Documents Relating to that Policy.

Plaintiff Rebecca R. Gunnoe  ("**Plaintiff**" or **"Trustee"**) is the Trustee of The Gunnoe Irrevocable Insurance Trust (**"Trust"**), and the widow of the late Dr. Charles Gunnoe, M.D., who died on March 10, 2012.  (Complaint ¶¶ 1, 5 and 12.) Plaintiff is informed and believes that Defendant Reassure America Life Insurance

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

Company ("**Defendant**" or "**RALI**") issued at least one life insurance policy to Dr. Gunnoe in or about 1990 ("**Policy**"). (Complaint ¶ 4.)   Plaintiff alleged this fact on information and belief because, as discussed in further detail below, after her husband's death and prior to filing this lawsuit, Plaintiff made four written requests to Defendant that it produce a copy of the Policy and each time Defendant refused to produce a copy of the Policy.  As of the time Plaintiff filed this lawsuit, Defendant had still refused to produce a copy of the Policy to Plaintiff.  (Complaint ¶¶ 13-20, 29.)

Plaintiff married Dr. Gunnoe in 1976, and was married to him until his death. Dr. Gunnoe was over eighty years old at the time of his death.  The Trust was created in 1981 for the purpose of holding and being the beneficiary of insurance policies on the life of Dr. Gunnoe. Plaintiff has been the Trustee of the Trust since its creation.  The beneficiaries of the Trust are four of Dr. Gunnoe's children. (Complaint ¶ 5.)

The Trust made payments on the Policy for over twenty years, until the events described in the lawsuit.  (Complaint ¶ 5.)   Plaintiff received no payments from Defendant after Dr. Gunnoe's death.  (Complaint ¶ 20.)

After Dr. Gunnoe died in March 2012 and Plaintiff received nothing from Defendant, Plaintiff reviewed her late husband's documents that she was able to find, and she also sent four separate written requests to Defendant for a copy of the Policy and documents in Defendant's file relating to the Policy.  Those four requests were sent to Defendant between July and November 2012.  The first two written requests were made in July and September 2012 (*before* Defendant contends on p. 5:11-15 of its Motion that the statute of limitations on Plaintiff's claim for insurance "bad faith" expired on September 25, 2012 or January 11, 2013) by Plaintiff herself.  When Defendant refused to provide anything to Plaintiff in response to those requests, Plaintiff retained legal counsel who sent two more

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

requests, in October and November 2012, to Defendant for copies of the Policy and all documents in Defendant's file for the Policy.  Each time Defendant refused to produce a copy of the Policy.  As of the date Plaintiff filed this lawsuit (March 1, 2013), Defendant had refused to provide Plaintiff a copy of the Policy.  (Complaint ¶¶ 13-20, 29.)

In response to Plaintiff's third request for a copy of the Policy and documents relating to the Policy in November 2012, made through Plaintiff's legal counsel, Defendant stated that Defendant would produce the requested documents if Plaintiff's counsel provided Defendant the written signature of Plaintiff authorizing the release of the Policy and other requested documents.  This was in spite of the fact that Defendant already had two previous written requests for those documents, both of which requests were signed by Plaintiff.  (Complaint ¶ 17.)

Therefore, on November 17, 2012, Plaintiff's counsel provided Defendant yet another request signed by Plaintiff for a copy of the Policy and all documents in Defendant's file for the Policy.  This constituted the fourth request to Defendant for a copy of the Policy and all documents relating to the Policy.  (Complaint ¶ 17.)

By letter dated December 17, 2012, Defendant still did not produce the Policy.  Defendant produced only selected documents (discussed further below), and made no representation as to whether those documents that Defendant produced were all of the documents in Defendant's file relating to the Policy.   As discussed further below, one of those documents produced by Defendant for the first time was a letter titled, "Notice of Grace Period," dated August 19, 2010, which was sent to the wrong address for Dr. Gunnoe, following the receipt of which Plaintiff filed this lawsuit on March 1, 2013.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

**B.**     <u>Factual Background Regarding Events Prior to Dr. Gunnoe's Death in March 2012.</u>

While Dr. Gunnoe was alive, Defendant's communications regarding the Policy were with him, as discussed below.  On or about January 18, 2010, Dr. Gunnoe notified Defendants that his address to which all notices regarding the Policy should be sent had changed from 720 Magnolia Avenue, No. B-1, to 387 Magnolia Avenue, No. 103-134, in Corona, CA.  Shortly following that, in February 2010, Defendants sent a letter to the new address at 387 Magnolia Avenue, thereby confirming that Defendant was aware of Dr. Gunnoe's new address.  (Complaint ¶ 6.)

Dr. Gunnoe received a letter from Defendant dated September 25, 2010, sent by regular U.S. mail, titled "NOTICE OF POLICY TERMINATION," in which Defendant stated that it  had terminated the Policy.  Defendant sent this letter to the correct address for Dr. Gunnoe, at 387 Magnolia Ave., in Corona, CA. However, Defendant had sent no prior notice to Dr. Gunnoe at the correct address informing that Defendant would terminate the Policy in September 2010.  In fact, as discussed below, Defendant had sent a notice in August 2010 that it would terminate the Policy in September 2010, but Defendant sent that notice to the wrong address even though Defendant sent letters to Dr. Gunnoe at the correct address at 387 Magnolia Avenue both before and after August 2010.  (Complaint ¶ 7.)

In Defendant's "NOTICE OF POLICY TERMINATION" letter dated September 25, 2010, Defendant stated that Defendant had terminated the Policy "due to insufficient cash value to cover the cost of insurance and expenses," but that Dr. Gunnoe "may be eligible to reinstate [the] policy.  The reinstatement of terminated coverage will require evidence of insurability, underwriting approval

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

and payments of all past due premiums during the lifetime of the insured." (Complaint ¶ 8.)

At that time in September 2010, Plaintiff had been making monthly payments to Defendants for approximately twenty years since the inception of the Policy. Further, Plaintiff had made a monthly payment to Defendants on or about September 7, 2010, which Defendant accepted. (Complaint ¶ 9.)

In October 2010, Defendant sent further correspondence to Dr. Gunnoe at the correct address at 387 Magnolia Avenue in which Defendant stated that in order for Defendant to consider reinstating the Policy, Dr. Gunnoe must provide information relating to his current health. Dr. Gunnoe promptly filled out and returned various detailed forms to Defendant relating to his health, along with a written offer to pay any amounts necessary to reinstate the Policy. However, at the age of 82, Dr. Gunnoe was no longer in the same physical condition that he was in when the Policy was issued in 1990. (Complaint ¶ 10.)

Defendant sent a letter to Dr. Gunnoe dated January 11, 2011, stating that Defendant had rejected Dr. Gunnoe's application for reinstatement of the Policy:

> due to your history of renal insufficiency as confirmed on your current insurance lab [sic]. Also your history of diabetes, hypertension and carotid artery disease that you reported [sic]. Because this medical information indicates a significant change in health since your insurance policy was originally issued, reinstatement is not possible. (Complaint ¶ 11.)

As stated above, Dr. Gunnoe died on March 10, 2012. (Complaint ¶ 12.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

**C.**     **Facts Disclosed by Defendant on December 17, 2012, in Response to Plaintiff's Fourth Written Request for a copy of the Policy and All Documents Relating to the Policy.**

As discussed in Section B above, after Dr. Gunnoe's death in March 2012, Plaintiff sent four written requests to Defendant for a copy of the Policy and all documents relating to the Policy— in July, September, October and November 2012.  Defendant refused to produce the Policy in response to any of those requests.  By letter dated December 17, 2012, Defendant sent a letter to Plaintiff's legal counsel, and for the first time, produced a copy of a letter dated August 19, 2010, which was captioned "NOTICE OF POLICY GRACE PERIOD," but which was addressed to the wrong address for Dr. Gunnoe, in spite of the fact that Defendant had sent correspondence to Dr. Gunnoe both prior to and after August 2010 to the correct address at 387 Magnolia Avenue in Corona, CA.  In this incorrectly addressed letter dated August 19, 2010, Defendant stated that the Policy would terminate on September 23, 2010, unless a payment of $9,456.70 was sent to Defendant by that date.  (Complaint ¶ 18.)

In her claim for insurance "bad faith" breach of the implied covenant of good faith and fair dealing, Plaintiff alleged that Defendant's conduct in refusing Plaintiff's four written requests to produce the Policy to Plaintiff up to the filing of the lawsuit, and withholding production of the wrongly addressed "Notice of Grace Period" letter until December 2012, was an attempt by Defendant to cover up its misconduct in sending the "Notice of Grace Period" letter to the wrong address, in light of the fact that Defendant had sent previous, as well as subsequent, correspondence to Dr. Gunnoe at his correct address, and Defendant had received timely payments on the Policy for the previous twenty years. Defendant's disclosure for the first time in December 2012 that it had sent the "Notice of Grace Period" letter to the wrong address showed that its subsequent

1  conduct was wrongful, including Defendant's declaration that the Policy was
2  terminated, and could not be reinstated unless, among other things, Dr. Gunnoe
3  (who was 82 years old at the time) passed a medical test which essentially
4  required that he demonstrate that he was in the same physical condition he was in
5  at the time the Policy was issued twenty years earlier, in 1990.  (Complaint ¶¶ 27-
6  29.)

7  **III.   LEGAL STANDARDS FOR MOTION TO DISMISS.**

8         Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to
9  state a claim upon which relief can be granted. As a general matter, the Federal
10 Rules require only that a plaintiff provide "'a short and plain statement of the
11 claim' that will give the defendant fair notice of what the plaintiff's claim is and the
12 grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting
13 Fed.R.Civ.P. 8(a)(2)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007);
14 *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1161 (C.D. Cal. 2010).  In
15 addition, the Court must accept all material allegations in the complaint - as well as
16 any reasonable inferences to be drawn from them - as true.  *Doe v. United States*,
17 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411
18 F.3d 1092, 1096 (9th Cir.2005); *Greenwich Ins. Co.,* 729 F. Supp. 2d at 1161.

19        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
20 need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of
21 his 'entitlement to relief' requires more than labels and conclusions, and a
22 formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*,
23 550 U.S. at 555 (citations omitted); *Greenwich Ins. Co,* 729 F. Supp. 2d at 1161.
24 Rather, the allegations in the complaint "must be enough to raise a right to relief
25 above the speculative level." *Id.*

26        In other words, the allegations must be plausible on the face of the complaint.
27 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Greenwich Ins. Co,* 729 F. Supp. 2d at

28

1162. "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully. Where

a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

stops short of the line between possibility and plausibility of 'entitlement to relief.'

" *Id.* (citations and internal quotations omitted).

Pursuant to this Court's Standing Order dated April 10, 2013, "Rule 12(b)(6)

motions are discouraged unless counsel has a good faith belief that such motion

will likely result in dismissal, without leave to amend, of all or at least some of the

claims under applicable law."

## IV. PLAINTIFF'S CLAIM FOR INSURER'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS TIMELY FILED.

### A. Legal Standards for Determining When a Cause of Action for an Insurer's "Bad Faith" Breach of the Implied Covenant of Good Faith and Fair Dealing "Accrues," and Thus Causes the Applicable Statute of Limitations to Begin to Run.

#### 1. Legal Standards for "Accrual" of a Cause of Action.

A plaintiff must bring a claim within the limitations period after the cause of

action "accrues." Cal. Code Civ. Proc. § 312 [1]; *Holmes v. Hospira, Inc.* 2013 WL

1516952, *4 (C.D. Cal. 2013) citing *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397

(1999); *Romano v. Rockwell International, Inc.*, 14 Cal.4th 479, 487 (1996).

"Ordinarily, a cause of action accrues when it is complete with all of its elements,

i.e., upon occurrence of the last fact essential to the cause of action." *Holmes,*

2013 WL 1516952 at *4 citing *Norgart*, 21 Cal.4th at 397; *Fox v. Ethicon Endo–

Surgery, Inc.*, 35 Cal.4th 797, 806 (2005). A claim against a single defendant for

separate harms may accrue at different times, depending on what was discovered

---

[1] "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued..." Cal. Code Civ. Proc. § 312.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

1  when.  *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1323

2  (2007).

3      A cause of action does not necessarily accrue when an act or omission of

4  defendant constitutes a legal wrong as a matter of substantive law.  Rather, the

5  cause of action does not accrue, and thus the statute of limitations period cannot run

6  before plaintiff possesses a true cause of action, and a plaintiff "is entitled to a legal

7  remedy, not merely a symbolic judgment such as an award of nominal damages."

8  *Davies v. Krasna*, 14 Cal.3d 502, 513 (1975); *McCaskey v. California State*

9  *Automobile Association*, 189 Cal.App.4th 947, 959 (2010).   In *Budd v. Nixen,*  6

10  Cal.3d 195 (1971), the California Supreme Court held that the limitations period on

11  plaintiff's legal malpractice action did not begin until plaintiff had suffered

12  "appreciable harm." *Id*. at p. 200. "The mere breach of ... duty," the Court said,

13  "causing only nominal damages, speculative harm, or the threat of future harm - not

14  yet realized" normally "does not suffice to create a cause of action ...." *Id*.; *see also,*

15  *Miller v. Bean,* 87 Cal.App.2d 186, 189 (1948).  "[A]n action for mere nominal

16  damages [is] … at best illusory, and cannot be held to start the running of the

17  statute of limitations." *Walker v. Pacific Indemnity Co*., 183 Cal.App.2d 513, 517

18  (1960).  Thus, for example, when a party renunciates its intention to perform under

19  a contract, but has not yet failed to perform its obligation to pay under the contract,

20  no cause of action for a breach has yet accrued, because there is not yet any

21  "*compensable harm*" or "*injury*." *McCaskey,* 189 Cal.App.4th at 959-960 (italics

22  in original); *see also*, *United  States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1

23  Cal.3d 586, 597 (1970); *City of Vista v. Robert Thomas Securities*, 84 Cal.App.4th

24  882, 886 (2000).  "Mere threat of future harm, not yet realized, is not enough." *Id*.

25  "Basic public policy is best served by recognizing that damage is necessary to

26  mature such a cause of action." *Id*.  "Therefore, when the wrongful act does not

27  result in immediate damage, 'the cause of action does not accrue prior to the

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

1   maturation of perceptible harm.'" *Id*.; *see also, Walker v. Pacific Indemnity Co*.,

2   183 Cal.App.2d 513, 517 (1960) ("It is clear that mere possibility, or even

3   probability, that an event causing damage will result from a wrongful act does not

4   render the act actionable").

5   **2.   Elements of a Cause of Action For an Insurer's "Bad Faith"**

6   **Breach of the Implied Covenant of Good Faith and Fair**

7   **Dealing.**

8   An insurer is deemed as a matter of law to have a "special relationship" with

9   the insured because, among other things, the relationship is "inherently

10   unbalanced; the adhesive nature of insurance contracts places the insurer in a

11   superior bargaining position." *Egan v. Mutual of Omaha Ins. Co*., 24 Cal.3d 809,

12   820 (1979). There are at least two separate requirements to establish an insurer's

13   "bad faith" breach of the implied covenant of good faith and fair dealing: (1)

14   benefits due under the policy must have been withheld; and (2) the reason for

15   withholding benefits must have been unreasonable or without proper cause. *Waters*

16   *v. United Services Auto. Ass'n,* 41 Cal.App.4th 1063, 1069–1070 (1996); *Love v.*

17   *Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1151 (1990); *see also,* Judicial Council

18   of California, Civil Jury Instructions ("CACI"), No. 2331 ("[defendant]

19   unreasonably or without proper cause, [failed to pay/delayed payment of] policy

20   benefits"). As this Court held, "the 'primary test' of whether an insurer breaches

21   the implied covenant of good faith and fair dealing is 'whether the insurer *withheld*

22   *payment* of an insured's claim unreasonably and in bad faith.'" *Greenwich Ins. Co.,*

23   *supra,* 729 F. Supp. 2d at 1163, citing *Love*, 221 Cal.App.3d at 1151 (italics added).

24   Damages are an element of a claim for breach of the implied covenant of good faith

25   and fair dealing. *City of Vista*, 84 Cal.App.4th at 887.

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

**B.** **Plaintiff Filed This Lawsuit Less Than Two Years After Her Cause of Action for "Bad Faith" Breach of the Implied Covenant of Good Faith and Fair Dealing "Accrued."**

The instant case arises from a life insurance policy, and thus the only payments owed under the Policy were not due until the death of Plaintiff's husband, Dr. Gunnoe. Dr. Gunnoe died on March 10, 2012. (Complaint ¶ 12.) No benefits were due to Plaintiff under the Policy until March 10, 2012, at the earliest, and consequently, no damages could have arisen until March 10, 2012. Thus, the essential element of damages in Plaintiff's claim for "bad faith" breach of the implied covenant did not occur until March 10, 2012, *less than one year* prior to the date Plaintiff filed this lawsuit on March 1, 2013. Even if it is assumed for the sake of argument that Plaintiff knew in September 2010 (as Defendant contends) of a wrongful act by Defendant, Plaintiff would at that point in time been at best entitled to only a symbolic judgment such as an award of nominal damages, and thus the claim had not accrued. As the Court stated in *McCaskey,* even if a party has renunciated its intention to perform under a contract, but has not yet failed to perform its obligation to pay under the contract, then no cause of action for a breach has yet accrued because there is not yet any "*compensable harm*" or "*injury*." *McCaskey,* 189 Cal.App.4th at 959-960 (italics in original). Defendant asserts that the applicable limitations period for Plaintiff's claim is two years, and Plaintiff's lawsuit was filed well within two years after March 10, 2012, when Dr. Gunnoe died and the benefits of the Policy would have been due. For this reason alone, if no other, Defendant's Motion should be denied.

There is, however, another essential element of Plaintiff's claim – the wrongful and unreasonable act – that was concealed by Defendant until even later, in December 2012. Defendant concealed the "Notice of Grace Period" (which was sent to the wrong address in September 2010) until December 17, 2012, when

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

1   Defendant first disclosed that it sent this letter to Dr. Gunnoe at the wrong address.

2   Plaintiff has alleged Defendant's efforts to cover up that wrongful act in detail in

3   her Complaint.  This unreasonable and wrongful act rendered Defendant's

4   subsequent conduct wrongful as well, including Defendant's declaration that the

5   Policy had terminated, and in asserting that Dr. Gunnoe must pass a physical exam

6   which he could not pass at his advanced age.  Plaintiff filed this lawsuit less than

7   three months after she learned of that letter.  For this second and independent

8   reason, Plaintiff's claim for "bad faith" breach of the implied covenant was timely

9   filed.

10           In its Motion, Defendant asserts that Plaintiff should be deemed to have

11   knowledge of the contents of the Policy, that the terms of the Policy required that

12   Defendant send the "Notice of Grace Period" letter thirty days prior to terminating

13   the Policy, and therefore, that Plaintiff's claim for "bad faith" breach of the implied

14   covenant accrued on September 25, 2010, when Defendant sent its "Notice of

15   Termination" letter.  Thus, Defendant erroneously concludes that the two year

16   limitations period expired two years later, in September 2012.  Defendant is wrong

17   for two reasons. First, the essential element of damage did not occur until Dr.

18   Gunnoe died on March 10, 2012.  Second, Defendant urges this Court to impute to

19   Plaintiff knowledge of the contents of the Policy which Defendant deliberately and

20   steadfastly concealed from Plaintiff up to and including when Plaintiff filed this

21   lawsuit.  Plaintiff has alleged that she made four separate written requests for the

22   Policy, two of which were made *before the date on which Defendant erroneously*

23   *asserts the statute of limitations expired*! Incredibly, Defendant now attempts to

24   argue that this Court should validate Defendant's deliberate concealment of the

25   Policy and its terms by nevertheless imputing the contents of that document which

26   Defendant has now attached to its Motion.  Plaintiff has alleged that Defendant's

27   concealment of the Policy itself was an *ongoing* act of "bad faith" breach of the

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

implied covenant at the time the Complaint was filed.   (Complaint ¶ 29.)   Given that that act of "bad faith" was ongoing at the time this lawsuit was filed, and that Defendant is now attempting to take advantage of it during the pendency of this lawsuit, Plaintiff's claim was clearly timely filed for this third and independent reason. *White v. Western Title Ins. Co,* 40 Cal.3d 870, 885–889 (1985) (insurer's duty of good faith and fair dealing survives the onset of litigation and evidence of the insurer's conduct during litigation is admissible to show the insurer's breach of the covenant of good faith and fair dealing).  For this third and independent reason, Plaintiff's claim was timely filed.

For each of the above-stated independent reasons, Plaintiff's claim for "bad faith" breach of the implied covenant of good faith and fair dealing accrued less than two years prior to the filing of this lawsuit, and was therefore timely filed.

## C.   In the Alternative, Under the "Discovery Rule," Plaintiff's Claim for "Bad Faith" Breach of the Implied Covenant Was Timely Filed.

Plaintiff contends, among other things, that her claim could not have "accrued" until her husband died on March 10, 2012, when the Policy benefits on the life insurance policy issued by Defendant first became due.  However, if for any reason this Court disagrees and concludes that Plaintiff's claim accrued on September 25, 2010, as Defendant contends, then the Court should apply the "discovery rule." Under that rule, Plaintiff's claim was timely filed.

"Under appropriate circumstances, accrual of a cause of action may be delayed until the plaintiff discovers the facts constituting the cause of action, or, as a reasonable person, should have been put on inquiry that his or her injury was caused by tortious wrongdoing, i.e., the 'Discovery Rule.'" *Holmes*, 2013 WL 1516952, at * 4 citing *Fox*, 35 Cal.4th at 807.  Plaintiff's suspicion of "elements" of a cause of action under the Discovery Rule refers to the "generic" elements of

wrongdoing, causation, and harm. *Id*. citing *Norgart*, 21 Cal.4th at 397.  Put another way, the Court must "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Id*. quoting *Fox*, 35 Cal.4th at 807.

In order to rely on the discovery rule, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal.4th at 806-807 citing *McKelvey v. Boeing North American, Inc*., 74 Cal.App.4th 151, 160 (1999).   Finally, when assessing the sufficiency of the allegations of delayed discovery, the Court places the burden on the plaintiff to "show diligence." *Id*.

The discovery rule assumes the existence of all elements of the cause of action, including injury, and "protects those who are ignorant of their cause of action through no fault of their own.  It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 832 (1983).  The burden is on the plaintiff to establish inability to discover the relevant facts earlier. *Czajkowski v. Haskell & White, LLP*, 208 Cal.App.4th 166, 177–178 (2012).

Here, the facts alleged in the Complaint overwhelmingly support application of the discovery rule to delay accrual of Plaintiff's "bad faith" claim against Defendant.  Following the death of Dr. Gunnoe in March 2012, Plaintiff sent two written requests for a copy of the Policy and documents relating to the Policy *prior* to the date Defendant contends the statute of limitations expired, September 25, 2012.  In response to Plaintiff's first request made in July 2012, Defendant refused to produce any documents, instead responding that "the policy is no longer inforce [sic.]"  (Complaint  ¶ 13.)  When Plaintiff sent her second request in September 2012, Defendant again refused to produce anything, sending two tersely worded

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

letters on September 25, 2012 (the date on which Defendant contends that the statute of limitations expired), stating that the policy was "no longer active" and "has been terminated."  (Complaint ¶¶ 14-15.)  The fact that Plaintiff made two written requests for the Policy and documents relating to the Policy *before* the date on which Defendant contends the statute of limitations expired (September 25, 2012), clearly shows Plaintiff was acting with reasonable diligence, and that Defendant's concealment of the documents, and not lack of diligence on Plaintiff's part, was the cause for Plaintiff's delay in filing this lawsuit.

As a result of Defendant's refusal to provide any information, Plaintiff retained legal counsel who sent two subsequent requests in October and November 2012, following which Defendant again refused to produce the Policy, but in December 2012, did produce for the first time the "Notice of Grace Period" letter sent to the wrong address.

And finally, Defendant refused to produce the Policy to Plaintiff up to the date Plaintiff filed this lawsuit, and then argues in its Motion that the content of the Policy that Defendant has concealed from Plaintiff should be imputed to Plaintiff in support of Defendant's Motion.  Thus, Defendant's "bad faith" was ongoing at the time this lawsuit was filed.  *White,* 40 Cal.3d 870, 885–889.

Plaintiff's ignorance of her "bad faith" claim was "through no fault of [her] own."  *April Enterprises*, 147 Cal.App.3d at 832.  The fault lies entirely with Defendant.  Defendant's stonewalling and concealment prevented Plaintiff from "discover[ing] the relevant facts earlier," as she had no other avenue to discover those material facts.  *Czajkowski*, 208 Cal.App.4th at 177–178.

Consequently, Plaintiff has alleged more than enough diligence to justify application of the discovery rule here, if necessary.  Defendant should not – and cannot – be rewarded for such a despicable course of concealment.  The conduct detailed in the Complaint is even more egregious when one considers that it was

1  directed toward an elderly widow, and began several months following the death of

2  her spouse.

3       Therefore, in the alternative, the discovery rule applies to Plaintiff's claim for

4  "bad faith" breach of the implied covenant, which extended the accrual of

5  Plaintiff's bad faith claim until disclosure of the actionable document in December

6  2012. For this alternative and independent reason, Plaintiff's claim was timely filed.

7  **V.  IN THE ALTERNATIVE, THE STATUTE OF LIMITATIONS ON**

8  **PLAINTIFF'S CLAIM FOR "BAD FAITH" BREACH OF THE**

9  **IMPLIED COVENANT WAS EQUITABLY TOLLED BECAUSE OF**

10  **DEFENDANT'S FRAUDULENT CONCEALMENT OF MATERIAL**

11  **FACTS.**

12       Plaintiff contends that her claim could not have "accrued" until her husband

13  died on March 10, 2012, when the Policy benefits first became due.  However, if

14  for any reason this Court disagrees and concludes that Plaintiff's claim accrued on

15  September 25, 2010, as Defendant contends, then the Court should apply, in the

16  alternative, the doctrine of equitable tolling to permit the resolution of Plaintiff's

17  claim on its merits.

18       **A.    Elements of Equitable Tolling and Application in Rule 12(b)(6)**

19            **Motions**

20       Equitable tolling is a judge-made doctrine "which operates independently of

21  the literal wording of the Code of Civil Procedure to suspend or extend a statute of

22  limitations as necessary to ensure fundamental practicality and fairness." *Holmes*,

23  2013 WL 1516952, at *6 quoting *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370

24  (2003).  Although the application of equitable tolling is limited to several particular

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

situations, it applies where a defendant has fraudulently concealed[2] a plaintiff's claim.   The purpose of equitable tolling is "to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory." *Regents of Univ. of Calif. v. Superior Court (Molloy)*, 20 Cal.4th 509, 533 (1999).  Put another way, a statute of limitations may not be used as "a *sword rather than a shield*, wielded by a party that has intentionally cloaked its identity . . . to perpetrate a fraud upon otherwise diligent suitors." *Bernson v. Browning–Ferris Indus. of California., Inc*., 7 Cal.4th 926, 935 (1994) (italics added).

   "To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in *concealment* of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *Sagehorn v. Engle*, 141 Cal.App.4th 452, 460-461 (2006) quoting *Federal Election Com'n v. Williams*, 104 F.3d 237, 240–241 (9th Cir. 1996) (internal citations omitted).

   The applicability of the equitable tolling doctrine usually depends on matters outside the pleadings.  As a result, it "is not generally amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206-1207 (9th Cir. 1995) quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).   A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id*. quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

---

[2] The effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded.  The tolled interval is tacked onto the end of the limitations period, thus extending the deadline for suit by the length of time during which the tolling event occurred. *Lantzy*, 31 Cal.4th at 370; see also *United States v. Ibarra*, 502 U.S. 1, 4, fn. 2 (1991).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

1980).[3]  Therefore, to the extent the equitable tolling doctrine applies to Plaintiff's claim, dismissal is not appropriate.  *Supermail Cargo, Inc.*, 68 F.3d at 1207, citing *Cervantes*, 5 F.3d at 1277 (other citations omitted).

**B.      Plaintiff's Complaint Alleges Sufficient Facts to Justify The Court's Equitable Tolling of Her Bad Faith Claim.**

Plaintiff has alleged more than enough facts to trigger the application of the equitable tolling doctrine, thereby rendering dismissal of Plaintiff's claim for "bad faith" breach of the implied covenant inappropriate under Rule 12(b)(6).  Defendant concealed its wrongful cancellation of the Policy and the documents which proved that the cancellation was improper until December 2012 (the "NOTICE OF POLICY GRACE PERIOD" document) and April 2013 (the Policy itself, which was attached to Defendant's Motion).  Further, as set forth above, Plaintiff and her counsel together sent four separate written requests for the production of the Policy, and each time, Defendant refused to produce the Policy, and only after receiving the fourth request did Defendant produce for the first time the "Notice of Grace Period" letter in December 2012.  Defendant delayed the production of the incriminating evidence until after it alleged the statute of limitations had expired on Plaintiff's claim.  A statute of limitations cannot be used as "a sword rather than a shield … to perpetrate a fraud upon" Plaintiff.  *Bernson*, 7 Cal.4th at 935.   Thus, this Court should apply the doctrine of equitable tolling to Plaintiff's claim for "bad faith" breach of the implied covenant, and deem it timely filed.

For this reason as well, Defendant's Motion to Dismiss must be denied.

---

[3] Furthermore, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  *Jablon*, 614 F.2d at 682  citing *Conley v. Gibson*, 355 U.S. 41 (1957).

-20-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**

## VI. **DEFENDANT'S FRAUDULENT CONCEALMENT OF MATERIAL FACTS EQUITABLY ESTOPS IT FROM ASSERTING A STATUTE OF LIMITATIONS DEFENSE.**

Finally, and again in the alternative, Defendant's well-chronicled course of conduct equitably estops it from asserting a statute of limitations defense to Plaintiff's claim for "bad faith" breach of the implied covenant.  The four factors generally required in order to establish a basis for equitable estoppel are: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exchange*, 132 Cal.App.4th 1076, 1099 (2005) quoting *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal.App.4th 1260, 1268 (1999).

Plaintiff's factual allegations, discussed above at length, when read as a whole, plead  facts supporting each of these elements.  As a result, Plaintiff has sufficiently "set forth the circumstances from which the estoppel arises."  *Doheny Park Terrace Homeowners Ass'n, Inc*, 132 Cal.App.4th at 1099 citing *In re Marriage of Hanley*, 199 Cal.App.3d 1109, 1121 (1988).          Therefore, in the event this Court determines that Plaintiff's claim is untimely, Defendant should be estopped from asserting the expiration of the statute of limitations as an affirmative defense.

## VII. **ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND HER COMPLAINT.**

Plaintiff contends she has pleaded facts sufficient to state a timely claim for "bad faith" breach of the implied covenant.  However, to the extent this Court determines that Plaintiff has not sufficiently pleaded her claim, Plaintiff should be

afforded leave to amend.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." *See also*, *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (standard for granting leave to amend is "generous"); *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

## VIII.   <u>CONCLUSION.</u>

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.  Alternatively, should the Court grant any aspect of the Motion to Dismiss, Plaintiff should be afforded leave to amend the Complaint.  Further, Plaintiff requests that the Court grant such other and further relief as appropriate.


DATED:  April 29, 2013          JACKSON, DeMARCO, TIDUS &
                                PECKENPAUGH


                                By: /s/ Edward A. Galloway
                                Alim Malik
                                Edward A. Galloway
                                Michael J. Fairchild
                                Attorneys for Plaintiff
                                REBECCA R. GUNNOE, TRUSTEE OF
                                THE GUNNOE IRREVOCABLE
                                INSURANCE TRUST

1142988.3

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S COMPLAINT**