M. Alim Malik, SBN 145546
amalik@jdtplaw.com
Edward A. Galloway, SBN 128962
egalloway@jdtplaw.com
Michael J. Fairchild, SBN 225946
mfairchild@jdtplaw.com
JACKSON, DeMARCO, TIDUS &
PECKENPAUGH
A Law Corporation
2030 Main Street, Suite 1200
Irvine, California 92614
Tel: 949.752.8585
Fax: 949.752.0597

Attorneys for Plaintiff
REBECCA R. GUNNOE, TRUSTEE OF
THE GUNNOE IRREVOCABLE
INSURANCE TRUST

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA R. GUNNOE, TRUSTEE OF THE GUNNOE IRREVOCABLE INSURANCE TRUST<br><br>Plaintiff,<br><br>vs.<br><br>REASSURE AMERICA LIFE INSURANCE COMPANY, and DOES 1 through 30, inclusive<br><br>Defendants. | CASE NO. 5:13-cv-00613 VAP (SPx)<br><br>**MEMORANDUM OF PLAINTIFF REBECCA R. GUNNOE, TRUSTEE OF THE GUNNOE IRREVOCABLE INSURANCE TRUST IN OPPOSITION TO DEFENDANT REASSURE AMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN PLAINTIFF'S FIRST AMENDED COMPLAINT (FRAUD)**<br><br>**[Request for Judicial Notice filed concurrently herewith]**<br><br>Date:     October 28, 2013<br>Time:    2:00 p.m.<br>Crtrm:   2 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT ALLEGATIONS ................................................................ 1

        A.      Defendant Deliberately Sent the "Notice of Policy Grace
                Period" Letter to the Wrong Address, Thereby Effectively
                Failing to Disclose to Plaintiff That Defendant Would Terminate
                the Policy Unless Plaintiff Made a Substantial Payment to
                Defendant .................................................................................... 2

        B.      Defendant's Voluntary Assumption by Contract of a Duty to
                Disclose ........................................................................................ 3

        C.      Defendant's Subsequent Active Concealment of the Fact That
                Defendant Sent the "Notice of Policy Grace Period" Letter to
                the Wrong Address  Following Dr. Gunnoe's Death in March of
                2012 ............................................................................................... 4

III.    ARGUMENT ............................................................................................ 6

        A.      Under California law, a duty to disclose for purposes of a fraud
                claim arises in at least four circumstances other than a fiduciary
                or confidential relationship, at least three of  which apply to
                Plaintiff's fraud claim against Defendant in this case ...................... 6

                1.      California law provides that a fraudulent concealment
                        claim can arise in at least four circumstances other than a
                        fiduciary or confidential relationship. ..................................... 6

                        a.      Defendant Owed the Trust a Duty to Disclose
                                Based On Defendant's Active Concealment of
                                Material Facts, and Plaintiff Has Pleaded Active
                                Concealment of Material Facts ................................... 8

                        b.      Defendant Also Owed Plaintiff A Duty of
                                Disclosure to Plaintiff Because the Facts Defendant
                                Concealed Were Within Its Exclusive Knowledge ........ 13

                        c.      Defendant had a duty to disclose because
                                Defendant has admitted that it voluntarily assumed
                                a contractual duty to disclose to the Trustee any
                                forthcoming termination of the Policy ......................... 15

        B.      In the Alternative, the Court Should Grant Plaintiff Leave to
                Amend Her Complaint ...................................................................... 16

IV.     CONCLUSION ........................................................................................ 17

1

**TABLE OF AUTHORITIES**

2

**Page**

3

## <u>CASES</u>

4

5

*Arizona v. Shamrock Foods Co.*
  729 F.2d 1208, 1215 (9th Cir. 1984) ....................................................... 4

6

*Barder v. McClung*
  93 Cal.App.2d 692 (1949) ................................................................ 14

7

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*
  162 Cal.App.4th 858, 867 (2008) ...................................................... 7, 15

8

9

*Curran v. Heslop*
  115 Cal.App.2d 476 (1953) ............................................................... 14

10

*Goodman v. Kennedy*
  18 Cal.3d 335, 347 (1976) ............................................................. 8, 13

11

12

*Houston v. Ferguson*
  2010 WL 4393873, 5 (N.D. CA 2010) .................................................. 10

13

*Independent Trust Corp. v. Stewart Information Services Corp.*
  665 F.3d 930, 943 (7th Cir. 2012) ...................................................... 16

14

15

*Irving v. Lennar Corp.*
  2013 WL 1308712, 10 (E.D. CA 2013) .............................................. 7, 15

16

*Lovejoy v. A.T.& T. Corp.*
  92 Cal.App.4th 85, 96 (2001) ................................................... 10, 11, 12

17

18

*Massei v. Lettunich*
  248 Cal.App.2d 68 (1967) ............................................................... 14

19

*Outboard Marine Corp. v. Superior Court*
  52 Cal.App.3d 30, 37 (1975) ............................................................ 10

20

21

*Rockwell International Corp. v. Hanford Atomic Metal Trades Council*
  851 F.2d 1208, 1210 (9th Cir. 1988) ................................................... 4

22

*Rothstein v. Janss Inv. Corp.*
  45 Cal.App.2d 64 (1941) ................................................................ 14

23

24

*SCC Acquisitions Inc. v. Central Pac. Bank*
  207 Cal.App.4th 859, 864 (2012) ..................................................... 7, 15

25

*Stevens v. Superior Court*
  180 Cal.App.3d 605 (1986) ............................................................ 9, 12

26

27

*United States v. Corinthian Colleges*
  655 F.3d 984, 995 (9th Cir. 2011) ...................................................... 16

28

*Warner Constr. Corp. v. City of Los Angeles*
  2 Cal.3d 285 (1970) .............................................................. 6, 7, 8, 13

-ii-

# TABLE OF AUTHORITIES

**Page**

*Wells v. John Hancock Mut. Life Ins. Co.*
    85 Cal.App.3d 66 (1978) ......................................................... 13, 14, 15

*Yen v. Buchholz*
    2010 WL 1758623, *7 (N.D. CA 2010) ...................................... 6, 8, 12

## <u>OTHER AUTHORITIES</u>

CACI No. 1901 ................................................................................ 9, 12

## <u>STATUTES</u>

California Civil Code § 1572 ................................................................ 8

## <u>TREATISES</u>

5 Witkin, Summary of California Law,
    (10th ed. 2005) Torts Ch. IX, § 798 ........................................... 8

5 Witkin, Summary of California Law,
    (10th ed. 2005) Torts Ch. IX, § 796 ............................................. 13

Witkin, Summary of California Law,
    (8th ed. 1974) Torts, § 462 ......................................................... 14

## I.    <u>INTRODUCTION</u>

In its Rule 12(b)(6) motion to dismiss Plaintiff's fraud claim (the "**Motion**"), Defendant Reassure America Life Insurance Company ("**Reassure**" or "**Defendant**") asserts that "[b]ecause there is no fiduciary or confidential relationship between Reassure and Plaintiff or Decedent, Reassure had no duty to disclose any of the information Plaintiff alleges should have been disclosed." (Motion [Doc. No. 27], at 4:1-3.)  Defendant erroneously asserts that a fiduciary or confidential relationship is an indispensable element of a fraudulent concealment claim.

Under California law, a defendant has a duty to disclose, and a cause of action for fraudulent non-disclosure of those facts may arise, in at least three different circumstances in the absence of a confidential or fiduciary relationship where:

(1)    the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff;

(2)    the defendant actively conceals discovery of material facts from the plaintiff; and

(3)    the defendant has voluntarily assumed a contractual obligation to make the disclosure.

As demonstrated in this Memorandum, all three of these circumstances are present in this case, any one of which alone is sufficient to require the denial of Defendant's Motion.

## II.    <u>RELEVANT ALLEGATIONS</u>

Plaintiff Rebecca R. Gunnoe ("**Plaintiff**" or **"Trustee"**) is the Trustee of The Gunnoe Irrevocable Insurance Trust (**"Trust"**), and the widow of Dr. Charles Gunnoe, M.D. ("**Dr. Gunnoe**"), who died on March 10, 2012.  (First Amended Complaint ("**FAC**") ¶¶ 1, 4, 13.)  Plaintiff's FAC was filed on August 9, 2013, as

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

authorized by this Court.  Plaintiff is informed and believes that the Trust is the designated beneficiary of a life insurance policy issued in or about 1990 on the life of Dr. Gunnoe.  (FAC ¶ 3.)  Defendant has admitted that it is the administrator of the Policy.  (Joint Report Pursuant to Rule 26(f), Doc. No. 21, page id. # 240, lines 22-23, filed 08/15/13.)

For over twenty years, Plaintiff made monthly payments to Defendant to maintain the Policy in effect from its inception in or about 1990.  At the time of the events described in the FAC, Defendant itself was withdrawing monthly payments from Plaintiff's bank account.  (FAC ¶ 5.)

A.   **Defendant Deliberately Sent the "Notice of Policy Grace Period" Letter to the Wrong Address, Thereby Effectively Failing to Disclose to Plaintiff That Defendant Would Terminate the Policy Unless Plaintiff Made a Substantial Payment to Defendant.**

In mid-January 2010, Dr. Gunnoe notified Defendant that Plaintiff's mailing address had changed.  Shortly thereafter, Defendant sent a letter to the Trustee's new address, which confirmed that Defendant was aware of the address change.  (FAC ¶ 6.)

Unbeknownst to Plaintiff, in August 2010, Defendant sent a "Notice of Policy Grace Period" letter to the wrong address – Plaintiff's old address.  In that letter, Defendant stated that Defendant would terminate the Policy on September 23, 2010 unless a payment in the amount of $9,456.70 was sent to Defendant by that date.  (FAC ¶ 19.)

Plaintiff never received the "Notice of Policy Grace Period" letter, nor did Plaintiff even know it existed until December 2012.  (FAC ¶ 19.)

On September 25, 2010, Defendant sent a letter to Plaintiff titled "Notice of Policy Termination."  (FAC ¶ 7.)  The "Notice of Policy Termination" was sent to Plaintiff's *correct* address.  In that letter, Defendant stated that it had terminated the

1   policy "due to insufficient cash value to cover the cost of insurance and expenses."

2   (FAC ¶ 9.)

3        Defendant intentionally sent the "Notice of Policy Grace Period" letter to the

4   wrong address to deprive Plaintiff of the opportunity to make a timely "cure"

5   payment and keep the Policy in force.  (FAC ¶¶ 19, 34.)  In doing so, Defendant

6   effectively failed to disclose to Plaintiff that Defendant was going to terminate the

7   Policy unless a substantial payment was made to Defendant.  When Defendant sent

8   the "Notice of Policy Grace Period" letter to the wrong address, Defendant knew

9   that Dr. Gunnoe was then over eighty years old, and that at that age, his health

10  would have deteriorated significantly since buying the life insurance policy that is

11  the subject of this case in 1990.  (FAC ¶ 35.)  Consequently, Defendant knew that

12  by purporting to terminate the Policy in September 2010, it virtually ensured that

13  Dr. Gunnoe would not be able to meet the health requirements for reinstating the

14  Policy after the grace period set forth in the wrongly addressed "Notice of Policy

15  Grace Period" letter had expired.  (FAC ¶ 35.)

16      **B.**    **<u>Defendant's Voluntary Assumption by Contract of a Duty to</u>**

17             **<u>Disclose.</u>**

18       Defendant has previously admitted in a document that Defendant asserted is

19  the Policy, and which Defendant submitted to this Court, that it had a duty to send

20  the "Notice of Policy Grace Period" letter to Plaintiff at the correct address.  (Doc.

21  No. 9-1 (Declaration of Denise Ratliff ["2.  Based on my review … Southwestern

22  Life Insurance Company issued [the] life insurance policy … insuring the life of

23  Charles Gunnoe, M.D.  The policy owner is The Gunnoe Irrevocable Insurance

24  Trust."]) and Doc. No. 9-2 (the Policy).)  This Court previously reviewed, and

25  relied upon specific terms of the Policy when ruling on Defendant's prior motion to

26  dismiss in this case.  (Minute Order Granting Motion to Dismiss Second Claim

27  (Doc. No. 14), at 4, 7.)  Copies of the Policy and the Declaration of Denise Ratliff

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1   submitted to the Court by Defendant are attached to Plaintiff's Request for Judicial

2   Notice filed contemporaneously with this Memorandum.

3         That copy of the Policy which Defendant previously submitted to this Court

4   contains a provision titled "**GRACE PERIOD**" (bold font in original).   That

5   section states in pertinent part,

6               If the cash surrender value on a monthly anniversary day

7               will not cover the next monthly deduction, a grace period

8               of 61 days from such monthly anniversary day will be

9               allowed to pay a premium that will cover the monthly

10              deduction.  The Company [Defendant] will send a written

11              notice 30 days before the end of the grace period to the

12              owner's last address shown in the Company's records and

13              to any assignee of record if the premium is not previously

14              paid… The policy will remain in force during the grace

15              period, unless surrendered…

16  (Doc. No. 9-2, page id. #113).[1]

17        C.    **Defendant's Subsequent Active Concealment of the Fact That**

18              **Defendant Sent the "Notice of Policy Grace Period" Letter to the**

19              **Wrong Address Following Dr. Gunnoe's Death in March of 2012.**

20        Defendant then actively concealed the fact it sent the "Notice of Policy Grace

21  Period" letter to the wrong address.  Following Dr. Gunnoe's death in March 2012,

22  _____

23  [1]  Plaintiff has not yet had the opportunity to conduct discovery with respect to the
    copy of the Policy that Defendant previously submitted as evidence in support of its

24  previous motion to dismiss and represented to the Court is the Policy.   Therefore,
    by referring to that copy of the Policy here in this Memorandum, Plaintiff does not

25  represent to the Court that that copy of the Policy previously submitted by
    Defendant is the entire Policy or an accurate copy of the Policy.  However, by

26  submitting it to the Court, Defendant is now judicially estopped from denying that
    it is a complete and accurate copy of the Policy.  *Arizona v. Shamrock Foods Co*.,

27  729 F.2d 1208, 1215 (9th Cir. 1984), cert. denied, 469 U.S. 1197, 105 S.Ct. 980, 83
    L.Ed.2d 982 (1985); *Rockwell International Corp. v. Hanford Atomic Metal Trades*

28  *Council*, 851 F.2d 1208, 1210 (9th Cir. 1988).

    **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE**
    **SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1   Defendant refused to provide any documents to Plaintiff relating to the Policy.

2   (FAC ¶ 38.)  Plaintiff sent two separate written requests to Defendant for copies of

3   the Policy and all other pertinent Policy documents in July 2012 and September

4   2012.  (FAC ¶¶ 14-15.)  However, in three separate letters, Defendant refused to

5   provide Plaintiff any documents.  (FAC ¶¶ 14-16.)  Defendant responded by simply

6   stating that "the policy is no longer active" and that "this policy has been

7   terminated as of September 2010."   Defendant provided no explanation why

8   Plaintiff, after making payments on the Policy for twenty years, was not entitled to

9   any of the documents she requested.  (FAC ¶ 16.)

10       Defendant engaged in further active concealment for the period from

11  September 2012 until after the filing of this lawsuit.  For example, it took a total of

12  four separate written requests by the Trustee before Defendant produced any

13  documents relating to the Policy.  (FAC ¶¶ 17-18, 38.)  Defendant refused to

14  produce anything until December 17, 2012 – more than two years after Defendant

15  purported to terminate the Policy – when Defendant finally disclosed the wrongly

16  addressed "Notice of Policy Grace Period" letter.  Defendant delayed even longer in

17  producing a copy of the Policy, waiting until after this lawsuit was filed to do so.

18  (FAC ¶ 39.)

19       Further relevant facts are referenced in the text of Plaintiff's argument.

20

21

22

23

24

25

26  ///

27  ///

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

III.   **ARGUMENT**

    A.   **Under California law, a duty to disclose for purposes of a fraud claim arises in at least four circumstances other than a fiduciary or confidential relationship, at least three of which apply to Plaintiff's fraud claim against Defendant in this case.**

        1.   **California law provides that a fraudulent concealment claim can arise in at least four circumstances other than a fiduciary or confidential relationship.**

In its Motion, at p. 4:1-3, Defendant assumes without discussion that the lack of a fiduciary or confidential relationship between the parties is fatal to any fraudulent concealment claim.  Defendant's presumption is inaccurate.  A duty to disclose exists in at least four other circumstances.

In *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285 (1970), the California Supreme Court held:

> In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in *at least three* instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff.

*Id.* at 294 (emphasis added; footnotes and citations omitted).  *See also, Yen v. Buchholz*, 2010 WL 1758623, * 7 (N.D. CA 2010) (nondisclosure or concealment may be actionable as fraud when the defendant had exclusive knowledge of

1    material facts not known to the plaintiff; when the defendant actively conceals a

2    material fact from the plaintiff; and when the defendant makes partial

3    representation but also suppresses some material facts).

4        A duty to disclose also arises where it is "voluntarily assumed by contractual

5    undertaking." *Irving v. Lennar Corp*., 2013 WL 1308712, 10 (E.D. CA 2013)

6    (quoting *SCC Acquisitions Inc. v. Central Pac. Bank*, 207 Cal.App.4th 859, 864

7    (2012)); *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th

8    858, 867 (2008).)

9        In *Warner Constr. Corp.,* the plaintiff was a construction contractor who

10   entered into an agreement with the City of Los Angeles to construct a retaining wall

11   on a street in Los Angeles.   During construction, caving occurred in several

12   unsupported holes which the plaintiff had drilled.   *Warner,* 2 Cal.3d 285 at 290.

13   The contractor unsuccessfully tried to support the walls of the holes by driving steel

14   casings into the surrounding sand for support.   However, that threatened to collapse

15   the entire construction area.   *Id*.   The contractor then requested a change order to

16   permit drilling with rotary mud, which would add stability but also increase the

17   price substantially.   The City refused to approve the change order, maintaining that

18   the construction plans required only that holes be drilled, which left the drilling

19   method (and the associated costs) to the contractor's discretion.   *Id*.

20       The construction contractor asserted a claim for fraudulent concealment

21   against the City, alleging that the City had failed to disclose that "cave-ins"

22   occurred in both test holes drilled by the City, which forced the City to change its

23   drilling methods and to abandon the test holes before reaching the planned depth of

24   50 feet.   *Warner Constr. Corp.*, 2 Cal.3d at 291.   The construction contractor also

25   alleged that the city had concealed information that two ancient landslides occurred

26   at the construction site.   *Id*.   After citing the rule quoted above, the California

27   Supreme Court noted:

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7

> [a]ll these [three] instances [were] present in this case, or
> so the jury could find.  The nondisclosure of the cave-ins
> and special drilling techniques used in drilling the test
> holes transformed the logs into misleading half-truths.
> The facts concealed were exclusively available to
> defendant.  Finally, plaintiff presented evidence of
> intentional concealment by the city.

8  *Id*. at 294-295.

9      As discussed below, the facts pleaded in Plaintiff's claim for fraud against
10 the Defendant insurance carrier in the instant case fall within at least three of the
11 categories in which a duty to disclose arises for purposes of a fraudulent
12 concealment claim.

13          **a.      Defendant Owed the Trust a Duty to Disclose Based**
14                  **On Defendant's Active Concealment of Material**
15                  **Facts, and Plaintiff Has Pleaded Active Concealment**
16                  **of Material Facts.**

17      As stated above, active concealment supports a claim of fraudulent
18 concealment, irrespective of a fiduciary or confidential relationship between the
19 parties. *See, e.g*., *Warner Constr. Corp.,*  2 Cal.3d at 294; *Goodman v. Kennedy,*  18
20 Cal.3d 335, 347 (1976); *Yen v. Buchholz,*  2010 WL 1758623 at * 7.  *See also*, Civil
21 Code section 1572[2]; 5 Witkin, Summary of California Law, (10th ed. 2005) Torts

22 _____
   [2]  Civil Code section 1572 provides:

23          Actual fraud, what. Actual fraud, within the meaning of
24          this Chapter, consists in any of the following acts,
25          committed by a party to the contract, or with his
26          connivance, with intent to deceive another party thereto,
27          or to induce him to enter into the contract: …[¶] 3. The
28          suppression of that which is true, by one having

-8-
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

Ch. IX, § 798; and CACI No. 1901.[3] The legal effect of active concealment is the same as that of affirmative misrepresentation. *Stevens v. Superior Court*, 180

---

knowledge or belief of the fact.

[3] CACI No. 1901 provides in relevant part:

> [Name of plaintiff] claims that [he/she] was harmed
> because [name of defendant] concealed certain
> information. To establish this claim, [name of plaintiff]
> must prove all of the following:
> [1 (a) That [name of defendant] and [name of plaintiff]
> were [insert type of fiduciary relationship, e.g., "business
> partners"]; and
> (b) That [name of defendant] intentionally failed to
> disclose an important fact to [name of plaintiff];]
> [or]
> [1 That [name of defendant] disclosed some facts to
> [name of plaintiff] but intentionally failed to disclose
> [other/another] important fact(s), making the disclosure
> deceptive;]
> [or]
> [1 That [name of defendant] intentionally failed to
> disclose an important fact that was known only to
> [him/her/it] and that [name of plaintiff] could not have
> discovered;]
> [or]
> [1 *That [name of defendant] actively concealed an*
> *important fact from [name of plaintiff] or prevented*
> *[him/her/it] from discovering that fact;]*

-9-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1   Cal.App.3d 605, 609 (1986); *Outboard Marine Corp. v. Superior Court*, 52
2   Cal.App.3d 30, 37 (1975).  Active concealment requires "willful suppression of
3   material fact." *Houston v. Ferguson*, 2010 WL 4393873, 5 (N.D. CA 2010) (citing
4   *Lovejoy v. A.T.& T. Corp.*, 92 Cal.App.4th 85, 96 (2001).

5       In *Lovejoy v. A.T.& T. Corp.,* the Court of Appeal reversed a trial court's
6   dismissal of a fraudulent concealment claim by a long-distance customer against
7   ATT for failing to disclose to him that it had terminated service for his 800 number.
8   The plaintiff alleged that ATT "slammed" his business's 800 telephone number by
9   appropriating it for itself through false representation to a third party (the plaintiff's
10   then existing 800 number provider, Pac Bell) that it had plaintiff's authorization to
11   switch his 800 number to ATT.  Plaintiff further alleged that once ATT obtained
12   plaintiff's business's 800 number, ATT concealed the fact that it was charging him
13   for 800 number service.  Plaintiff then got into a billing dispute with ATT, and
14   ATT terminated his long distance service, including his 800 number, without
15   plaintiff's knowledge.  *Id.* at 90.  The Court held that plaintiff's allegation that ATT
16   intentionally concealed that it had terminated his 800 number service was sufficient
17   to state a cause of action for fraudulent concealment.  *Id*. at 96 - 97.

18           The disconnection, which sabotaged his [plaintiff's]
19           business, occurred because plaintiff was kept in the dark
20           about the switch in service. This raises the crucial
21           question: despite its flaws in pleading affirmative fraud,
22           did the complaint state a valid cause of action for
23           fraudulent *concealment*? We believe it did.

24   *Id.* at 95 (emphasis in original).

25   _____

26           …

27    (Italics added.)

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1

2       After the "slam," ATT allegedly suppressed the 800

3       switch and concealed it from plaintiff by hiding the

4       charges within its long-distance bill. *The surreptitious*

5       *switch and its concealment from plaintiff were a breach of*

6       *duty by ATT to plaintiff, a long-distance customer.*

7  *Id.* at 96 (emphasis added).

8       Thus, in *Lovejoy,* the court held that a long-distance carrier had a duty to

9  disclose that it had terminated a customer's long distance service and was liable for

10 fraudulent concealment for intentionally concealing that fact in the long distance

11 carrier's statements to the customer.  In the instant case, Plaintiff asserts that

12 Defendant, a life insurance carrier, had a duty to disclose to Plaintiff, as the

13 beneficiary of the life insurance policy, that Defendant was going to terminate the

14 Policy unless a substantial payment was made within a month, and intentionally

15 concealed that fact by deliberately sending the "Notice of Policy Grace Period"

16 letter to the wrong address.  Under the *Lovejoy* court's rationale, Plaintiff, as the

17 beneficiary of a life insurance policy who had made decades of payments to the

18 insurer, is certainly on equal, if not better footing than the customer of a long

19 distance carrier in asserting fraudulent concealment where the defendant

20 deliberately concealed important information.  Without question, Plaintiff has

21 alleged that Defendant engaged in the willful suppression of material facts.

22 Plaintiff has alleged that Defendant intentionally sent the "Notice of Policy Grace

23 Period" letter to the wrong address in order to prevent Plaintiff from making a cure

24 payment.  That act gave Defendant the ability to claim – wrongfully -- that the

25 Policy was cancelled and retain the hundreds of thousands of dollars in premium

26 payments which Plaintiff had made over more than twenty years.  Plaintiff also

27 alleged that Defendant then deliberately covered up that misconduct by, among

28

-11-
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE**
**SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1    other things, refusing to provide Plaintiff with any documents – let alone a copy of

2    the Policy or the "Notice of Policy Grace Period" letter itself – for more than two

3    years after Defendant wrongly claimed it terminated the Policy.  Defendant further

4    attempted to cover up its misconduct by falsely representing that Dr. Gunnoe would

5    have to pass medical tests in order for there to be any chance that the Policy be

6    returned to its prior effective status.  (FAC ¶¶ 11-12.)

7        *Stevens v. Superior Court,* 180 Cal.App.3d 605 (1986) also supports the

8    sufficiency of Plaintiff's concealment allegations.  *Stevens* involved a fraud claim

9    by a patient against a hospital, in which the plaintiff alleged that the hospital

10   allowed unlicensed foreign physicians to practice medicine on its premises.  *Id.* at

11   607.  The patient (plaintiff) alleged that the hospital had concealed from her the fact

12   that one of the unlicensed physicians participated in a cesarean section procedure

13   that was performed on her, and caused her to become brain dead.  *Id.* at 608.

14       Like the *Lovejoy* court, the *Stevens* panel reversed the Superior Court's

15   dismissal of the claim on the grounds that it failed to state a cause of action.  The

16   *Stevens* court concluded that the hospital had a duty to disclose to the plaintiff that

17   the foreign physician was not licensed to practice in California, and he was not

18   supervised.  Plaintiff alleged that the defendant hospital deliberately concealed

19   those facts from plaintiff. The Court held that the complaint adequately pleaded a

20   cause of action for fraudulent concealment based on allegations of active

21   concealment.  *Id.* at 610.

22       Accordingly, because Plaintiff has pleaded sufficient facts to show that

23   Defendant intentionally concealed important facts from her, Plaintiff has stated a

24   valid claim for fraudulent concealment.  For this reason alone, if no other, the Court

25   should deny Defendant's Motion.

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1
2
3

        **b.**      **Defendant Also Owed A Duty of Disclosure to Plaintiff Because the Facts Defendant Concealed Were Within Its Exclusive Knowledge.**

4
5
6
7
8

      Defendant's systematic concealment of material facts is also actionable for a second and independent reason. As stated above, a duty to disclose arises when the defendant alone has knowledge of material facts which are not accessible to the plaintiff. *Warner Constr. Corp.*, 2 Cal.3d at 294;[4] *Goodman,* 18 Cal.3d at 347; *Yen,* 2010 WL 1758623 at * 7.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

      *Wells v. John Hancock Mut. Life Ins. Co.*, 85 Cal.App.3d 66 (1978), illustrates the application of this rule where a life insurance carrier failed to disclose that the policy had lapsed to a lender to whom the policy was assigned as collateral for a loan, and the carrier had exclusive knowledge of the lapse of the policy. The plaintiff alleged that she had been assigned a life insurance policy as security for certain loans she had made to the owner of the policy. When the insurance carrier received notice of the assignment in favor of the plaintiff, the life insurance company knew that the policy had previously lapsed due to non-payment of premiums and the expiration of the grace period. *Id*. at 69. The plaintiff sued the life insurance company for fraudulent concealment based upon its failure to disclose to her that that the policy had terminated. The life insurance carrier demurred to plaintiff's "fraud and deceit" cause of action, arguing that it had no duty to disclose to the plaintiff that the policy had lapsed. The trial court sustained the life insurer's demurrer.

23
24
25
26

      The Court of Appeal reversed the trial court's decision, holding that the life insurance carrier owed, and had breached, a duty to disclose to the plaintiff, an assignee of the life insurance policy as collateral for a loan, that the policy had lapsed for non-payment of premiums and the expiration of the grace period. *Wells,*

27
28

      —————————
[4] *See also* 5 Witkin, Summary of California Law, (10th ed. 2005) Ch. IX, § 796 (and cases cited); CACI No. 1901.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

85 Cal.App.3d at 72.  In reaching that decision, the Court noted that the insurance carrier's knowledge that the policy had been terminated for non-payment was a fact that was not accessible to the plaintiff.  Consequently, the Court held that the life insurance carrier had a duty to disclose that the policy had lapsed to the assignee of the policy as collateral for a loan.  The Court held that the life insurer's failure to make that disclosure was grounds for imposing liability for fraudulent concealment.[5]

> [K]nowledge concerning the legal status of the policy is peculiarly that of the insurer. A long unbroken line of California decisions recognizes that such disparity of knowledge may result in an imperative of disclosure. (*Massei v. Lettunich* (1967) 248 Cal.App.2d 68, 73, 56 Cal.Rptr. 232 (duty to disclose that lots were on filled land); *Rothstein v. Janss Inv. Corp*. (1941) 45 Cal.App.2d 64, 68, 113 P.2d 465 (ditto); *Curran v. Heslop* (1953) 115 Cal.App.2d 476, 480, 252 P.2d 378 (failure to disclose violation of State Housing Act, not discoverable on casual inspection); *Barder v. McClung* (1949) 93 Cal.App.2d 692, 697, 209 P.2d 808 (failure to disclose violation of zoning ordinances); Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 462.)  We think the present situation easily falls within the principle of these decisions.

*Id.* at 72.

Applying the court's ruling in *Wells v. John Hancock Mut. Life Ins. Co*. to the instant case, it would be anomalous to hold that a life insurance carrier has a

_____

[5] In dicta, the Court suggested that under the facts pleaded, a jury could reasonably infer that the nondisclosure was so significant that it amounted to an implied *affirmative* and false representation that the policy was, in fact, in effect. *Wells,* 85 Cal.App.3d at 73, n.9.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

duty to disclose that a policy has lapsed to a third party lender to whom the policy is assigned as collateral, but a life insurance carrier does not have a duty to disclose to the beneficiary of a life insurance policy who has made decades of premium payments that the policy will lapse unless a substantial payment is made within a short period of time.  The allegations in Plaintiff's FAC make it abundantly clear that Defendant's acts of concealment were neither known by Plaintiff, nor accessible to her.  Plaintiff did not learn of the existence of the wrongly addressed "Notice of Policy Grace Period" letter until December 2012, sixteen months after that letter had been sent to the wrong address, and after Plaintiff made multiple written requests for information and documents after her husband died and after Plaintiff was forced to retain legal counsel.  (FAC ¶19.)[6]  Only Defendant knew when – and where – the letter had been sent.  In the words of the Court in *Wells v. John Hancock Mut. Life Ins. Co.*, "knowledge concerning the legal status of the policy is peculiarly that of the insurer."

For this second and independent reason alone, if no other, Plaintiff's fraudulent concealment allegations are sufficient to state a claim, and Defendant's Motion should be denied.

       c.     **Defendant had a duty to disclose because Defendant has admitted that it voluntarily assumed a contractual duty to disclose to the Trustee any forthcoming termination of the Policy.**

As stated above, a duty to disclose also arises where it is "voluntarily assumed by contractual undertaking." *Irving,* 2013 WL 1308712 at 10 (quoting *SCC Acquisitions Inc.,* 207 Cal.App.4th at 864); *Blickman Turkus, LP,* 162 Cal.App.4th at 867.

As set forth in section II.B above, Defendant voluntarily assumed a

---

[6]  Plaintiff alleged that she "never received this letter, and therefore [December 17, 2012] was the first time that Plaintiff has seen such a letter from Defendant." (FAC ¶ 19.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

contractual duty to disclose pursuant to the terms of the document which Defendant represented to this Court is the Policy.  In that agreement, Defendant "voluntarily assumed by contractual undertaking" a duty to disclose in writing to Plaintiff that Defendant would terminate the Policy unless a payment was made within thirty days.

Plaintiff has alleged that Defendant intentionally sent the "Notice of Policy Grace Period" letter to the wrong address, thus effectively failing to make any disclosure to the Trustee that Defendant was going to terminate the Policy, and thereby violating the obligation of disclosure that Defendant voluntarily assumed by contract.

Consequently, for this third and independent reason alone, if no other, Plaintiff has stated a claim for fraudulent concealment and Defendant's Motion should be denied.

**B.**     **In the Alternative, the Court Should Grant Plaintiff Leave to Amend Her Complaint.**

In the event this Court determines that Plaintiff has not sufficiently pleaded a claim for fraudulent concealment, she should be afforded leave to amend her claim. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." *See also*, *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (standard for granting leave to amend is "generous"); *Independent Trust Corp. v. Stewart Information Services Corp*., 665 F.3d 930, 943 (7th Cir. 2012).

After Plaintiff filed her FAC, Defendant served its Rule 26(a)(1) initial disclosures which included a number of documents that Plaintiff had never seen before and which show, among other things, that Defendant received independent confirmation in writing that Plaintiff never received the "Notice of Policy Grace Period" letter, and Defendant received that confirmation prior to the deadline set

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**

1  forth in that letter.   Further, the documents show that Defendant received

2  independent written confirmation of Plaintiff's correct address prior to the deadline

3  set forth in the "Notice of Policy Grace Period" letter.

4  **IV.   CONCLUSION**

5        Based on the foregoing, Plaintiff respectfully requests that this Court deny

6  Defendant's Motion to Dismiss in its entirety.   Alternatively, should the Court grant

7  the Motion to Dismiss, Plaintiff should be afforded leave to amend her First

8  Amended Complaint.   Further, Plaintiff requests that the Court grant such other and

9  further relief as appropriate.

10

11  DATED:  October 7, 2013     JACKSON, DeMARCO, TIDUS &

12                                  PECKENPAUGH

13

14                                  By:  /s/ Edward A. Galloway

15                                     Alim Malik

16                                     Edward A. Galloway

       Michael J. Fairchild

17         Attorneys for Plaintiff

       REBECCA R. GUNNOE, TRUSTEE OF

18         THE GUNNOE IRREVOCABLE

       INSURANCE TRUST

19  1169391.2

20

21

22

23

24

25

26

27

28

-17-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND CLAIM FOR RELIEF IN FIRST AMENDED COMPLAINT**